IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

FILED
FEB 23 2017
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

| | |
|---|---|
| Edith McCurry ) | |
| ) | |
| ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| VS. ) | CASE No. 16-cv-02273-CSB-EIL |
| ) | |
| KENCO LOGISTIC SERVICES, LLC, et al. ) | |
| MARS, Inc. and others ) | |
| DEFENDANTS. ) | |

## MOTION FOR CLARIFICATION AND RECONSIDERATION ON COURT'S FEBRUARY 7, 2017 RULING

**NOW COMES** Plaintiff, EDITH MCCURRY ("Plaintiff') pro se, seeks and requests clarification on the IHRA (775 ILCS 5/Art. 6 heading) ARTICLE 6. ADDITIONAL CIVIL RIGHTS VIOLATIONS, specifically § B Aiding and Abetting and § C Interference, as well as, Intentional Infliction of Emotional Distress and for her good cause shown in support of her motion Plaintiff states the following; THAT:

1. Plaintiff believed according to IHRA (775 ILCS 5/Art. 6 heading) ARTICLE 6. ADDITIONAL CIVIL RIGHTS VIOLATIONS, Aiding and Abetting and Interference were additional CIVIL RIGHTS VIOLATIONS, just as Retaliation.

2. Plaintiff also believed that The IHRA does not preclude courts from exercising jurisdiction over all tort claims factually related to incidents of a civil rights violation.

3. Plaintiff also had believed that both claims are actionable even aside from its character as a civil rights violation.

4. Plaintiff further believes and asserts that Defendants engaged Plaintiff unknowingly in its schemes to impair, obstruct and interfere with the protected rights, employment

and business relationships of other persons who were once employed by Defendant Mars and managed by Defendant Kenco, as well as, the obstruction and due process of government operations and law; ultimately aiding and abetting Defendants in their willful and intentional contrived schemes of conspiracy; falsification of documents; the dissemination of misleading and disingenuous information; the evading, impeding and obstructing of government operations and justice; and the continued violation of persons protected rights.

5. Plaintiff believes that these actions caused Plaintiff and others irreparable harms of adverse employment decisions, adverse findings during the course of the administration of justice, increased economic hardships, as well as, physical and mental duress and stress.

6. Plaintiff also believes that Defendant's legal Counsel, Karen Smith, aided and abetted Defendants when Defendant Kenco's legal Counsel, made blatant and outright mistruths to the IDHR and EEOC under oath, in writing, on behalf of Plaintiff with regards to an ongoing administrative proceeding.

7. Plaintiff also believes that Defendant's legal Counsel, Karen Smith, interfered with and obstructed governmental operations and the administration of justice when Defendant's legal Counsel, made blatant and outright mistruths to the IDHR and EEOC under oath, on behalf of Plaintiff with regards to an ongoing administrative proceeding.

8. Plaintiff contends that Smith further her schemes with through the Mail and by telephone.

9. Plaintiff also believes that Defendant's then outside legal Counsel, Jay Elliott, aided and abetted Defendants when Defendant Kenco's legal Counsel, intentionally, knowingly and willfully participated in a contrived scheme that was fully executed when it hired Elliott as Vice President of Legal.

10. Plaintiff asserts that according to Defendant Kenco's company policy to hire Elliott, as a Vice President, it would take the approval of other Vice Presidents and/or Senior Executives of the Company to effectuate a hire of this nature.

11. Plaintiff further believes that the hiring of Elliott aided and abetted Defendants in impairing, obstructing and impeding a government operation of the administrative procedures of the IDHR and EEOC investigation not only in Plaintiff's matter, but other employees who waged claims against Defendant as well.

12. Defendant's Elliott participated in Plaintiff's fact finding conference by telephone with the IDHR and EEOC offering testimony and supplied information by email, mail and other forms of mail services; such as but not limited to: FedEx or UPS;

13. Elliott had no firsthand information and knowledge about Defendants, Kenco or Mars day to day operations, policies, procedures and protocols or the events Plaintiff alleged; ultimately making blatant and outright mistruths to the IDHR and EEOC in an ongoing administrative proceeding.

14. Elliott was not physically situated at the Mars Manteno facility, nor does Plaintiff believe that Elliott ever spent any appreciable amount of time, if any time at all, at the Mars Manteno facility.

15. Elliott also provided fraudulent, misleading and disingenuous information to the IDHR and EEOC in Plaintiff's matter before the IDHR and EEOC under oath in the verified and position statements.

16. Plaintiff believes that the actions of Defendant's Elliott aided and abetted Defendants to avoid culpability, liability and obstruct and impede a governmental operation, the administration of law and justice, as well as, interfered with Plaintiff and others protected rights.

17. Plaintiff also believes that Elliott also intentionally obstructed and impaired the administration of law and violated is office, as Elliott is a sworn officer of the court as a licensed and practicing attorney in the state of Tennessee.

18. Plaintiff also believes that Elliott and Smith also intentionally obstructed and impaired the IDHR and EEOC investigators from performing their official functions by providing misleading, disingenuous and fraudulent information and statements to IDHR and EEOC under declaration, certification, verification, and/or statement under penalty of perjury, as well as, an impediment to any future adjudication proceedings.

19. Plaintiff also believes that these written and verbal statements made to the IDHR and EEOC were defamatory and also caused Plaintiff and others intentional infliction of emotional distress.

20. Plaintiff also believes that the Defendants along with Karen Smith Defendant Kenco's former outside legal counsel committed perjury against the government, when Defendants submitted their verified and position statements under declaration, certification, verification, and/or statement under penalty of perjury that contained misleading, disingenuous and fraudulent information, policies, procedures, policies and forms to the IDHR and EEOC during the official investigations of violations against the protected rights of Plaintiff and others.

21. Plaintiff also notes that the Court cited in its ruling that Plaintiff referred to and often rambled about incidents not related to Plaintiff.

22. Plaintiff indeed at great lengths referred to and rambled about incidents not related to Plaintiff to, as a means to describe that defendant's actions far exceeded "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities" that are part of a complex society.

23. Plaintiff also only listed a portion of the incidents that occurred over time to demonstrate the pervasiveness of Defendants conduct that would lead an average

member of the community to exclaim that defendant's conduct was in fact "Outrageous!"

24. *For example, for a reasonable and average person, it would be hard to conceive that on an ongoing and regular basis, the Senior Executives of any company would come into collusion with its outside legal counsel to contrive schemes to intentionally and willfully conspire against the laws of the land and its former and current employees.*

25. *Specifically, Karen Smith and Jay Elliott of Miller and Martin, Defendant's outside legal counsel, in 2010 or so had defended Defendant Kenco in a civil rights action and used as a defense to the courts under oath that Defendant regularly treated its African American employees discriminately, disproportionately, and harsher than its white employees.* ***Brown Vs. Kenco 3:10-cv-00668***

26. Plaintiff contends that Smith and Elliott knew of Defendant Kenco's admitted pattern and practice of systematic discrimination.

27. Plaintiff contends that Smith and Elliott are officers of the court and as a part of their fiduciary obligation to the court they are not to engage in an activity that even gives the appearance of a violation of the law let alone engage violations of the law.

28. Additionally, plaintiff contends that her IIED claim exists independently from her other claims.

29. Seemingly, according to the Court Plaintiff has differentiated and made a clear distinction of her claims from those cited by Plaintiff that related to other employees that highlighted the abusive, animus and hostile work environment for everyone that was created or sustained by Defendants in these other claims.

30. Plaintiff also believes that the Court is aware of a number of these claims cited by Plaintiff, as a number of persons cited in these instances by Plaintiff have waged claims before this court for the grievances cited by Plaintiff.

31. Plaintiff was the Human Resource Administrator and was privy to these and other employee matters, as a matter of ordinary course of Plaintiff's job duties.

32. Plaintiff also contends that it had informed Defendants' agents, including but not limited to: Leonard Szplett's former HR/Accounting Manager of the Mars Manteno Facility, Tammi Fowler former Senior Employee Relations Manager of Kenco, Kelvin Walsh former General Manager of the Mars Manteno Facility, and Karen Smith Defendants then outside legal counsel on more than one occasion the treatment of herself and other employees at the Mars Manteno facility, as well as, the stress, duress, terrorization and physical life threatening dangers from the actions of Defendant Mars employees that Kenco managed at the Mars Manteno Facility.

33. Plaintiff continuously reported the racially motivated terrorizing and life threatening physical, and verbal threats and epithets imposed upon African American employees and those who opposed such actions to Defendants' agents.

34. **Defendants had** a shooting at the Mars Manteno Facility in 2012; Defendants again had terrorizing threats and racially motivated adverse actions to employee's wellbeing during the year of 2013; Defendants continued to have its employees terrorized, threatened and subjected to adverse employment decisions and working conditions; attempts to harm and kill employees that were racially motivated at the Mars Manteno Facility throughout the year of 2014.

35. Plaintiff and others were in constant fear and terror, as they were afraid for their lives due to the rampant racially motivated acts that were being enacted and condoned by management at the Mars Manteno facility.

36. For example, Pete Monstwillo under racial motivation attempted to murder Vernon Henry with a moving forklift; an intentional reckless accident of this nature could have not only severely harmed or killed Henry, but other innocent employees from

the racking system collapsing or giving way holding tens of thousands of pounds of product that could have crushed employees to their death.

37. Monstwillo continued to call the Mars Manteno facility and threaten to do further harm to Henry.

38. Realistically how would Plaintiff or other employees not be physiologically devastated or in terror or in fear or afraid or a combination thereof for their lives based upon Defendant's employees continued actions.

39. Defendants did nothing to prevent, deter, or halt these behaviors.

40. Defendants' employee, Monstwillo, had been exhibiting these racially motivated actions and touts of supremacy since 2013, when he was a temporary employee.

41. Plaintiff also earnestly states that Defendants supported and continued to foster an animus, hostile and abusive work environment.

42. Defendant Kenco's Vice President in June of 2014 openly praised Kelvin Walsh, as a friend of the company and a great loss to the company.

43. Walsh also was a contributor, an initiator and supporter of the racially motivated, animus and hostile work environment, as well as, perpetrator of such acts.

44. Defendants actually rewarded the persons responsible for these acts with public praise, permanent employment, premium shifts, higher wages, more opportunities, regular forty (40) hour shifts, overtime, more fringe benefits, less scrutiny, no reprisal and or punishment for the violation of the law and company policy.

45. Defendants created, cultivated, and preserved a racially volatile, motivated and animus work environment.

46. Defendant Mars had an onsite Regional Distribution Manager that managed the Mars Manteno warehouse, since the inception of the warehouse in 1999.

47. Mars Regional Distribution Manager did nothing to prevent, deter, or halt these behaviors of its manager Kenco or its employees at the Mars Manteno facility.

48. Plaintiff and others were afraid and terrified daily for their safety and lives because of this racially volatile, motivated and animus work environment created and sustained by Defendants and its management.

49. Defendants also on a regular and ongoing basis publicly humiliated, reprimanded, harshly criticized and imposed economic sanctions on African Americans and those who opposed the discriminant treatment of African Americans.

50. Plaintiff relates Defendants behaviors to that of slave master publicly lynching or beating its slaves, to set an example of what the retribution is and will be for questioning/bucking the system or demanding equality.

51. Plaintiff believes that this was a form of terrorism.

52. Plaintiff believes that Defendant intentionally and willfully terrorized its employees.

53. Defendants Kenco and Mars had a fiduciary obligation to the employees at the Mars Manteno facility.

54. Defendants Kenco/Mars required employees to sign an offer letter of acceptance from an Executive Officer of the company and countersigned by an agent of Defendant, that could be an Executive Officer or Senior Manager of the company.

55. Defendants had extensive and comprehensive rules, regulations and protocols that it failed to follow and or conform to.

56. Defendants had Quality Management Systems of rules, regulations, protocols, and forms.

57. Defendants breached its fiduciary obligation to Plaintiff and others, when it failed to administer its Quality Management System (policies, procedures, and protocols) and the law of the land equitably to the employees of the Mars Manteno facility.

58. Plaintiff believes that Defendants knew from its past history, the constant reminders from Plaintiff, the numerous complaints made by employees and the current racially

motivated actions that irreparable harms would be inflicted upon Plaintiff and others, from the racially charged, animus, volatile and hostile work environment.

59. Plaintiff believes that Defendants actions were purposeful and intentional, as Defendants had rules, regulations, protocols and forms for every instance that occurred at the Mars Manteno facility; consequently, the failure to apply and or equitably apply these rules, regulations, protocols and forms was intentional, willful, and a plain reckless disregard for its employees.

60. Defendants allowed employees to report employee concerns, violations of company and public policy to Plaintiff, as the HR Administrator, knowing full well that Defendant had instructed Plaintiff not to do anything about these issues, but to report them to Tammi Fowler, The Senior Employee Relations Manager, who was in Chattanooga, TN.

61. After the incident with Madison, in late December of 2013, Defendant created a confidential and anonymous hotline for employees to report employee concerns and issues.

62. Defendants allowed employees to report employee concerns and issues to a fictitious anonymous confidential employee hotline.

63. Defendants mislead its employees into believing that employee concerns, violations of company and public policy were being unbiasedly investigated according to the law of the land and company policy; when in fact the issues were not.

64. Defendants would also violate employee confidentiality by informing the manager of the identity of the person along with other vital or confidential information.

65. Employees of the Mars Manteno facility that made the complaints were retaliated against by the person whom the complaints were made against from the breach of confidentiality.

66. This also continued to foster the hostile work and animus work environment.

67. Plaintiff believes this breach was contrived and intentional.

68. Plaintiff was also subjected to violent malicious acts by Defendants' employee while at work.

69. Defendants Kenco and Mars refused to investigate, follow protocol or make Plaintiff whole for the various property damages that Plaintiff suffered while on Defendants premises.

70. Defendants did nothing to deter the harmful beahviours imposed upon Plaintiff.

71. Plaintiff believes that Defendants and Defendants management allowed these beahviours to occur, exist and be imposed upon Plaintiff as a form of retaliation, terrorism, coercion and intimidation.

72. Plaintiff also believes that Defendant Kenco's new hired HR Manager, Lori Varvel, publicly stated to the employees that Plaintiff had failed to complete a task that adversely affected the employees of the Mars Manteno facility.

73. Plaintiff believes that this also was an intentional infliction of emotional and physical stress and duress, as it further created tension and hostility from the employees toward Plaintiff; stoking the already volatile, animus and hostile work environment.

74. Plaintiff eventually had to take a medical leave of absence in January of 2015.

75. Defendant approved this medical leave of absence.

76. Plaintiff also states that Defendants have continued to further intentionally inflict and subject Plaintiff to emotional distress and duress on Plaintiff, even after Plaintiff's physician had notified Defendants beginning in January of 2015 of Plaintiff's conditions.

77. Plaintiff believes that Defendants conduct was pervasive, outrageous, intentional, willful and reckless.

78. This motion is made in good faith and is not intended to unduly delay these proceedings and the clarification and relief requested would not cause any prejudice to Defendant, but if denied would greatly prejudice Plaintiff.

**WHEREFORE,** Plaintiff requests that this Honorable Court clarify, if aiding, abetting and interference are additional civil rights violations under the IHRA; that, if they are additional civil rights violations, that the claims be viewed actionable even aside from its character as a civil rights violation and that the court invoke its jurisdiction over these claims, as well as, reconsidering IIED claim also as a standalone claim.

Plaintiff requests that this Honorable Court grant her motion for clarification and reconsideration.

Respectfully submitted,
**Edith McCurry**

By: *Edith McCurry*
Pro Se
Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL 60958

## CERTIFICATE OF SERVICE

Please take notice that on February 21, 2017, I, Edith McCurry, hereby, certify that I did file a MOTION FOR CLARIFICATION AND RECONSIDERATION with the Central District of Illinois Urbana Division in the foregoing matter of Case No. 16-cv-02273-CSB-EIL and have served the persons identified on the docket's service list through a Notice of Electronic Filing generated by the Court's CM/ECF system.

*Edith McCurry*

Pro Se
Edith McCurry
6239 South 13110 East Road
Pembroke Township, IL 60958

Kimberly J. Overbaugh
Thomas R. Davies
Harmon & Davies, P.C.
2306 Columbia Ave
Lancaster, PA 17603

Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 North Michigan Ave., Suite 2500
Chicago, IL 60601