UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

EDITH McCURRY,

    Plaintiff,

v.

KENCO LOGISTIC SERVICES, LLC,
et al.,

    Defendants.

Case No. 16-2273

**ORDER**

This case is before the Court on Defendants Kenco Logistic Services, LLC, Kelvin Walsh, Mike Manzello, David Jabaley, Tammi Fowler, Mario Lopez, and Lori Varvel's (collectively "Defendants") Motion to Strike and Bar Plaintiff's Expert James Kolka (#53). Plaintiff Edith McCurry ("Plaintiff") filed a Response to Defendants' Motion to Strike (#59). For the reasons set out below, Defendants' Motion to Strike and Bar Plaintiff's Expert James Kolka (#53) is GRANTED.

**I.     Background**

On August 29, 2016, Plaintiff filed her Complaint (#1) alleging employment discrimination against Defendants. Plaintiff's Complaint alleges that she was discriminated against based on her age, race, gender, and disability. Plaintiff also alleges conspiracy and retaliation claims. On February 7, 2017, the Court held a Rule 16 Scheduling Conference during which Plaintiff's expert disclosure deadline was set for July 14, 2017. On the date her disclosure was due, Plaintiff filed a Motion for Extension of Time to Submit Expert Witnesses (#48). Plaintiff's Motion was granted on July 20, 2017 and Plaintiff's deadline to disclose an expert was extended to August 14, 2017.

Shortly thereafter, on August 14, 2017,[1] Plaintiff disclosed James Kolka as her expert witness.

On September 9, 2017, Defendants filed the instant Motion to Strike and Bar Plaintiff's Expert (#53). Defendants argue that Kolka should be stricken and barred for three reasons. First, Defendants argue that Plaintiff's expert disclosure was untimely and incomplete. Second, Defendants claim that Kolka's background in the International Organization for Standardization ("ISO") and quality management has no relationship to the issues in the litigation and, therefore, his claimed expertise will not assist the trier of fact. Finally, Defendants argue that Kolka's opinions are not expert in nature because they are not grounded in any scientific methodology and consist entirely of personal observations.

## II.    Legal Standard

Federal Rule of Evidence 702 controls the admissibility of expert testimony. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" provided the witness and his testimony meet particular criteria. FED. R. EVID. 702; *Tuf Racing Products Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). As an initial threshold, the witness's specialized knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Then, the Court must determine the testimony must to be reliable. Rule 702(b) to (d) establishes three distinct reliability criteria the court should consider: (1) the opinion must be based on sufficient facts or data; (2) the opinion must be the product of reliable principles and methods; and (3) the expert must have reliably applied those principles and methods to the facts of the case. *Id.*

Rule 702 in its current form effectively codifies a line of Supreme Court decisions that began with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). In *Daubert*, the Supreme Court held that the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is

---

[1] Defendants argue that Plaintiff's expert was not disclosed until either August 16, 2017 or August 23, 2017, and therefore the disclosure was untimely. This argument is addressed later in this Order.

scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." "Specifically, a district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue." *Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). "The principle of *Daubert* is merely that if an expert witness is to offer an opinion based on science, it must be real science, not junk science." *Tuf Racing Products Inc.*, 223 F.3d at 591.

The Court's role is to scrutinize the proposed testimony to determine whether it is sufficiently reliable to present to a jury. *Lablsely v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). The Court should test expert testimony "to be sure that the person possesses genuine expertise in a field and that her court testimony 'adheres to the same standards of intellectual rigor that are demanded in [her] professional work.'" *Tyus v. Urban Search Management*, 102 F.3d 256, 263 (7th Cir. 1996) (quoting *Braun v. Lorillard Inc.*, 84 F.3d 230, 234) (7th Cir. 1995). Nevertheless, a *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy. "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley*, 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596).

### III.   Analysis

####    1.    Timeliness and Completeness of Plaintiff's Disclosure

Defendants first argue that Plaintiff's disclosure was not timely and not complete. As noted above, Plaintiff's original expert disclosure date was July 13, 2017. Upon Plaintiff's motion, the Court extended Plaintiff's deadline to August 14, 2017. Defendants claim that Plaintiff did not mail the disclosure until August 16, 2017 and claim that they did not receive Plaintiff's disclosure until August 23, 2017.

Plaintiff, in her response to Defendant's Motion, attaches a postal receipt (#59-1), purporting to show that Plaintiff mailed the expert disclosure on August 14, 2017, her

disclosure date. Based on this, the Court is satisfied that Plaintiff has sufficiently met the expert disclosure deadline of August 14, 2017. Even if Plaintiff mailed the expert disclosure on August 16, 2017, two days after her disclosure deadline, Defendants do not allege, let alone show, any prejudice from this short delay.

As to completeness, Defendants allege that Kolka's report lacks required information, including Kolka's compensation and a list of prior expert depositions or trials. Plaintiff responds that paragraph 6 of the expert report contains Kolka's compensation and paragraph 7 addresses prior depositions.

Paragraph 6 of Kolka's expert report states that he is "compensated at an hourly rate of $375.00 for preparation of this report and all other related work."[2] Paragraph 7 of Kolka's report states lawsuits in which Kolka has been involved. Kolka's report is sufficiently complete in these respects. Accordingly, Kolka's expert report will not be stricken on the basis of timeliness or completeness.

   **2.     Relevancy and Methodology**

Defendants next argue that Kolka's expertise in the areas of ISO and quality management is irrelevant to this lawsuit. As Defendants point out, Kolka's expert witness report is extremely disorganized and lacks any coherency. Kolka's report resembles more of a lengthy, piecemeal recitation of various ISO standards, than it does an expert witness report relevant to this employment discrimination case.

From what the Court is able to discern, Kolka appears to be an expert in the ISO 9000, ISO 9001, and ISO 22000 series of standards. Kolka identifies ISO as "a worldwide federation of national standards bodies." Kolka's Expert Witness Report, d/e # 59-2, pg. 24. Kolka represents that the aim of ISO is to "harmonize on a global level **the requirements for food safety management for businesses within the food chain**. *Id.* (emphasis added). Kolka goes on to state that ISO is "particularly intended for application by organizations that seek a more focused, coherent and integrated food

---

[2] The Court notes that Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis (#2) that was granted on August 29, 2016. Plaintiff's Motion indicated that she is on disability and had no cash on hand. The fact that Plaintiff is unable to pay a filing fee for this case but is able to pay $375 to have an expert witness report prepared raises the inference that Plaintiff was either untruthful on her IFP petition or that Plaintiff is receiving outside assistance that she has not disclosed.

4

safety management system than is normally required by law." *Id.* Kolka further states that ISO "requires an organization to meet any applicable food safety related statutory and regulatory requirements through its food safety program." *Id.* Kolka notes that ISO 9001 requires management to "make health and safety their primary responsibility." *Id.* at pg. 3.

Thus, from Kolka's own interpretation, ISO is designed to regulate food safety management and ensure food safety. This is made clear by both Kolka and Plaintiff's multiple references to Federal Food Drug and Cosmetic Act and 21 CFR Chapter 1 (and its various subparts), which deal exclusively with enforcement regulations for various food safety areas such as general labeling requirements and sanitary transportation of human and animal food.

Kolka's report discusses a guide for FDA auditors when they visit a medical device manufacturer. Kolka's Expert Witness Report, d/e # 59-2, pg. 6. Kolka talks at length about ISO 22000:2005, which Kolka states relates to "food safety standards." *Id.* at 7. In fact, pages 7 through 15 of the report do nothing but state the language of ISO 22000, which is completely related to food safety standards.

Plaintiff appears to agree that Kolka's area of expertise is in the area of food safety standards. Plaintiff's response to the Motion to Strike indicates that Kolka will "identify and clarify the ISO system" and how the ISO system works with the law to "standardize systems that regulate the public safety on every level of the supply chain that governs every aspect of everyone who touches food." Plaintiff's Response to Defendants' Motion to Strike Expert Report, d/e #59, pg. 2. Plaintiff also states that Kolka's report is based on the fact that "every Defendant in this case is subject to the rules and regulations outlined in 21 CFR Chapter I, Subchapter A, Part 1, Subpart H."[3]

Thus, Plaintiff's Response to Defendants' Motion to Strike and Kolka's expert report clearly show that Kolka's expertise is in the area of ISO and that ISO relates entirely to food safety standards.

---

[3] 21 CFR Chapter I, Subchapter A, Part 1, Subpart H deals exclusively with "Registration of Food Facilities." This subpart is clearly related to food safety management.

5

Although it is difficult to ascertain Kolka's opinions from his report, the Court generally agrees with Defendants that Kolka is opining on the following matters:

>1. The volume of complaints filed in a years' time against Defendants rises to a level of a pattern and practice of deliberate and intentional systemic discrimination;
>
>2. Defendants classified Plaintiff as a clerk who had no authority to report discrimination;
>
>3. A statement from an attorney made to Mary Madison (a Plaintiff in a separate, but related, lawsuit) was hearsay;
>
>4. Plaintiff should not have been written up for working after she punched out because there was no policy in place that she violated;
>
>5. Plaintiff's performance reviews were positive;
>
>6. Plaintiff was ostracized and stripped of benefits;
>
>7. Defendants' conduct intentionally inflicted emotional distress on Plaintiff;
>
>8. Defendants' have made false position statements because they no longer have access to certain former employees;
>
>9. Discovery responses provided in a different case were vague and misleading; and
>
>10. Defendants do not adequately investigate safety standards.

Pursuant to *Daubert*, the Court must determine (1) whether Kolka would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue. *Walker*, 208 F.3d at 586. Kolka's opinions are admissible only to the extent that they are reasoned, use the methods of the discipline, and are founded on data. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006). "Talking off the cuff -- deploying neither data nor analysis -- is not an acceptable methodology." *Id.*

Looking first to "valid scientific knowledge," there is nothing in Kolka's report that indicates the scientific methods Kolka used to reach his conclusions. Rather,

6

Kolka's report uses several pages to recite the ISO standards and then "talks off the cuff" about whether Defendants complied with these ISO standards. Independent of the question of relevance, there is no indication in Kolka's report as to what methods he used to reach the 10 opinions outlined above. Rather, it appears that Kolka looked at the ISO standards and then opined that Defendants do not follow them based on unsupported opinions and guesswork. For example, Kolka often states that "it seems" that Defendants did not follow policies[4], that the ostracism "seems" to be intentional[5], and that Plaintiff's personnel file "seemed" to lack issues highlighted in Plaintiff's pleadings.[6] In short, the report shows that Kolka is making off the cuff observations; all of Kolka's opinions are conclusory in nature and the Court can discern no valid scientific process used to reach these opinions.

More importantly, even if Kolka used valid, reliable scientific methods (which he did not), his expertise and opinions have no relevance to this case. Kolka's expertise is clearly related to ISO 9000, ISO 9001, and ISO 22000. These ISO standards have no relevance to Plaintiff's employment discrimination claims. Both standards deal with food safety management; they have nothing to do with whether Defendant discriminated against Plaintiff. Kolka's expertise in this field is completely irrelevant to Plaintiff's claims of discrimination.

Looking to Kolka's specific opinions, Kolka's first opinion that Defendants have engaged in "systemic and deliberate discrimination" is completely outside his area of expertise. Kolka's knowledge of ISO in no way qualifies him to opine on whether Plaintiff was discriminated against based on other complaints filed against Defendants. Moreover, there is no explanation for how Kolka arrived at this opinion.

Kolka's second opinion, that Plaintiff could not report discrimination, will not assist the trier of fact and is outside the scope of his expertise. Whether Plaintiff could or could not report the discrimination is irrelevant to whether Defendants terminated Plaintiff's employment because of her race, gender, age, or disability.

---

[4] Kolka's Expert Witness Report, d/e # 59-2, pg. 20.
[5] Id. at pg. 21.
[6] Id. at pg. 19.

7

Kolka's third opinion, that a statement made to Mary Madison is hearsay, is likewise irrelevant. It has nothing to do with whether Plaintiff was discriminated against and is outside the area of Kolka's expertise.[7]

Kolka's fourth opinion, that Plaintiff should not have been written up because there was no policy in place, is again outside of his area of expertise. ISO deals with food safety standards. There is nothing in Kolka's report that would suggest he has any knowledge or ability to opine as to whether Plaintiff should have been written up, whether there was a policy in place or not.

Kolka's fifth opinion, that Plaintiff's performance reviews were positive, is not an expert opinion; Plaintiff herself can testify to that fact.

Similarly, Kolka's sixth opinion that Plaintiff was "ostracized" and stripped of her benefits is testimony that Plaintiff can present herself. Indeed, Kolka has no firsthand facts to testify about, so he would presumably be telling the jury only what Plaintiff had told him. This, of course, would be inadmissible hearsay, even when disguised as an expert opinion or basis therefor.

Kolka's seventh opinion, that Defendants intentionally inflicted emotional distress on Plaintiff, is outside of his knowledge as an ISO expert. Moreover, this is not the proper scope of any expert opinion as Kolka is offering an opinion on Defendants' state of mind when he opines that the discrimination was intentional. *See Mar Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 786 (N.D. Ohio) (stating that Rule 704 does not allow an expert to opine on a person's state of mind because conclusory statements about a person's state of mind are not within the knowledge of any expert.)

Kolka's eighth opinion regarding false statements is nothing more than speculation and guesswork. Kolka opines that because Defendants did not have access to these former employees "it begs the question" as to whether they could have made certain position statements. Kolka is simply talking off the cuff and posing hypothetical questions without a supported method.

---

[7] The Court recognizes that Kolka is also an attorney and that he can recognize "hearsay." However, based on Plaintiff's representations and Kolka's expert witness report, Kolka's area of expertise is clearly ISO.

8

Kolka's ninth opinion, that discovery responses in other cases were vague and irrelevant, is outside of the scope of his ISO expertise and is not the proper subject of an expert opinion. Additionally, it has nothing to do with this case.

Kolka's tenth opinion, that Defendants do not adequately investigate safety standards, is the only opinion that may be construed to be within his realm of expertise, assuming this opinion falls under the umbrella of ISO 9000, ISO 9001, or ISO 22000. Regardless, whether Defendant investigates safety standards is completely irrelevant to Plaintiff's lawsuit. This opinion would not be in any way helpful to the trier of fact in resolving the issues in this employment discrimination case.

Finally, even if Kolka's opinions were reliable and relevant, they would in no way benefit the trier of fact. As noted, Kolka's expert report is disorganized and incoherent. His opinions have no relevance to this case and would only complicate an otherwise simply employment matter. The Court finds that Kolka's opinions would only confuse and mislead the jury; not help them to understand the evidence or determine a fact in issue.

### IV.  Conclusion

For these reasons, Defendants' Motion to Strike and Bar Plaintiff's Expert James Kolka (#53) is GRANTED. Plaintiff will not be permitted to use Kolka's expert witness report or present testimony from Kolka at trial.

ENTERED this 7th day of December, 2017.

                                                s/ERIC I. LONG
                                   UNITED STATES MAGISTRATE JUDGE