E-FILED
Monday, 26 March, 2018  10:38:00 AM
Clerk, U.S. District Court, ILCD

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF
ILLINOIS URBANA DIVISION

EDITH MCCURRY,

        Plaintiff,

                                    Case No. 2:16-cv-02273-CSB-EIL

V.                                      Judge Colin Stirling Bruce

                                      Magistrate Judge Eric I. Long

KENCO LOGISTIC SERVICES, LLC, et al.

        Defendants.

## PLAINTIFF'S OBJECTIONS TO DEFENDANTS VAREL, MANZELLO, KENCO, JABALEY, FOWLER, WALSH AND LOPEZ' INDIVIDUAL ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND BASIS FOR MOTION TO COMPEL

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendants, through their

attorneys, responds to Plaintiff's First Set of Interrogatories as follows:

### See attached Exhibits H & J

The discovery request conforms to Rule 33. The interrogatories are directly related to matters that are discoverable under Rule 26. Matter of fact each interrogatory is/was crafted to a specific or narrow scope of relevant incidents that occurred and/or are directly related to the policies, procedures, protocols, best practices, and forms of the company or the prevailing laws.

Moreover, the responding party has a duty to answer any part of an Interrogatory that is not objectionable. Additionally, the responding party must answer each Interrogatory separately, fully and in writing. Furthermore, the answers must be responsive, complete and not evasive. Likewise, the responding party should answer in "good faith" and not cite to having a lack of knowledge to answer or question, that given their position or posture they should really be able to answer. The responding party also has the duty to furnish all of the information available to it at the time of the answer. Last, of this purpose an evasive or incomplete disclosure answer or response is to be treated as a failure to disclose, answer or respond according to Rule 37.

1

**Defendant, Varvel**, has objected in some form to nearly every request, except
**Interrogatory number 12.** The objections made have been without specificity to what
faction, part, or parts is being objected to. Defendant objected and refused to answer
**Interrogatories number seven (7) and eleven (11);** Defendant should have had a grasp and
clear understanding of Defendant Kenco's policies and procedures and how they related to
Defendant Kenco's Quality Management System that encompassed record keeping,
personnel record keeping, and the prevailing laws, as that was Varvel's job function.
Therefore, to flat out not answer is a dereliction of Defendant's duties as the Human
Resource Manager of the Mars Manteno Facility, who was to enforce and comply with these
same rules.

In addition, Defendant has not met the burden of showing how the Interrogatories are overly
broad, burdensome, irrelevant, vague, not reasonably calculated to lead to discovery of
admissible evidence, or any other available adjective. Although **Interrogatory number 12**
was not objected to, it was a non-responsive, incomplete and evasive answer to the request.

The production of this information would not have required Defendant to search out any new
information, as this information was either personal to them or an intricate part of their job
duties, tasks, responsibilities, and functions. In tandem, any documents required to support
these answers, again, should have been easily accessible and producible for Defendant
Varvel, even if Defendant Kenco had to produce them on her behalf. As these documents,
were byproducts of the ordinary course of business and compliance to Defendant Kenco and
Mars' policies and procedures, as well as, the prevailing laws. Defendant admitted to having
such documents and having such documents on Defendant Varvel's behalf, but has failed to
produce them or particularize with specificity the reason that it has not done so. The failure
to produce the paperwork is a form of discrimination, as the standard and normal practice is
to have the relative paperwork associated with the policies, procedures, protocols and best
practices logged, tethered and retained.

Just one example would be, Defendant referred me to an outdated Curriculum Vitae (CV) to
answer an Interrogatory, specifically **Interrogatory number 3** that was not responsive to the
question. However, if you view Defendant's LinkedIn page, it gives a current summary of
her work history. So, the question is, why be so evasive, when you have freely noted this
information for the world to see?

**Defendant, Manzello**, has objected in some form to nearly every request, except numbers
**Interrogatories six (6) and eleven (11)**. The objections made have been without specificity
to what faction, part, or parts is being objected to. Defendant objected and refused to answer
**Interrogatories number four (4), eight (8) and ten (10)**; Defendant should have had a
grasp and clear understanding of Defendant Kenco's policies and procedures and how they
related to Defendant Kenco's Quality Management System, their role, their daily interaction,
duties, tasks and the enforcement and compliance to these policies, procedures, and the
prevailing laws. Therefore, to flat out not answer or evade answering is a dereliction of

2

Defendant's duties as the Operations Manager of the Mars Manteno facility, who is to enforce and comply with these same rules.

In addition, Defendant has not met the burden of showing how the interrogatories are overly broad, burdensome, irrelevant, vague, not reasonably calculated to lead to discovery of admissible evidence, or any other available adjective.  Although **Interrogatories number six (6) and eleven (11)** were not objected to, the answers were non-responsive, incomplete and evasive to the request.  **Number six (6) provided** intentionally false, deceptive and misleading information, regarding reporting discriminatory acts, as well as, being aware of such discriminatory acts.  **Number five (5)** provides this same level of flagrantly false information.

As a matter of fact, under the penalty of perjury, Manzello stated that: "Defendant is not aware of discriminatory acts or hostile working environment at the Manteno, Illinois Mars facility while he was employed."

1.  Mike Manzello was named in the cases of: Nathan Doss, Tracy Davis, Jacque Morrison, Vernon Henry, Morris Tyson and Scott Marksteiner's.
    a. Some of Nathan Doss' case numbers are: **Group Exhibit 11**
        a. **IDHR 2014CF2858 and EEOC 21B-2014-01536**
        b. **IDHR 2014CF3057 and EEOC 21B-2014-01685**
        c. **IDHR 2014CF3161 and EEOC 21B-2014-01747**
    b. Tracy Davis case number: **Exhibit 12**
        a. **IDHR 2014CF3162 and EEOC**
    c. One of Jacque Morrison's case number: **Exhibit 13**
        a. **IDHR 2015CF0008**
    d. Some of Vernon Henry's case numbers: **Exhibit 14**
        a. **IDHR 2015CF0034 and EEOC 21B-A42027**
        b. **IDHR 2015CF1315 and EEOC**
        c. **IDHR 2015CF2497 and EEOC 21B-A511360**
    e. One of Morris Tyson's case numbers:
        a. **IDHR 2015CF0699**
    f. Scott Marksteiner case number: **Exhibit 15**
        a. **IDHR 2015CF1054**
2.  Matter of fact Mike Manzello signed off on the verification form for Tracy Davis' case **Exhibit 12 verified response page 2 and;**

3

3.  Kenco admitted in its verified response to the Illinois Department of Human Rights and EEOC in Vernon Henry's case **2015CF0034** page 3 Section 5 that: "It was admitted that Complainant once reported to Mike Manzello that coworker Pete Monstwillo told complainant to 'look in the mirror." **Exhibit 14.**

4.  Tammi Fowler, Senior Manager of Employee Relations, Chattanooga, TN verified this statement to be true.

Therefore, it is impossible for Manzello not to have known about the number of discriminant acts and occurrences of the Mars Manteno Facility. Furthermore, this seems odd that Manzello would not remember what work activities he participated in that were hot buttons and that he verified under oath that coincided with alleged reasons for his termination.

The production of this information/documents requested would not have required Defendant to search out any new information, as this information was either personal to them or an intricate part of their job duties, tasks, responsibilities, and functions. In tandem, any documents required to support these answers, again, should have been easily accessible and producible for Defendant Manzello, even if Defendant Kenco had to produce them on his behalf, as stated by Defendant Kenco.

These documents were byproducts of the ordinary course of business and compliance to Defendant Kenco and Mars' policies and procedures, as well as, the prevailing laws. In addition, to some of these documents being a matter of public record these were also records that were to be maintained because of the charges of discrimination filed against Defendant Kenco. Defendant, Kenco admitted to having such documents and having such documents on Defendant Manzello's behalf, but has failed to produce them or particularize with specificity the reason that it has not done so. The failure to produce the paperwork is also viewed as a form of discrimination, as the standard and normal business practice is to have the relative paperwork associated with the policies, procedures, protocols and best practices logged, tethered and retained. Although the failure to produce this paper work is probably served better as tampering with evidence and obstructing justice, than it solely being a form of discrimination.

Moreover, it seems highly strange, almost even unlikely or improbable, that Manzello would not recall these and other incidents, some of the very ones, that attributed to him being chastised and scolded by Tammi Fowler and Dan Dey; and knowingly sign off under the penalty of perjury that the statements that he made were true and correct to the best of knowledge and belief.

Also, another odd occurrence was that Manzello's answer to **Interrogatory number two (2)** referred me to a Curriculum Vitae (CV) that has Manzello listed in his current occupation as a **building manager** for a company that was not named. Typically, building manager's deal with the facility (building) itself, the facilities systems-mechanical, electrical, HVAC, etc..., maintenance, and duties along those lines. Manzello managed and oversaw the logistical workforce that carried out the receipt, storage and distribution of Mars products at the Mars

4

Manteno facility. Building manager and Operations Manager jobs are not the same and require two (2) different types of skillsets.

**Defendant, Kenco**, has objected in some form to every request. The objections made have been made without specificity to what faction, part, or parts is being objected to. Defendant objected and refused to answer **Interrogatories number five (5), twelve (12), thirteen (13), fourteen (14) and sixteen (16);** Defendant should have had a grasp and clear understanding of their own policies and procedures and how they related to their Quality Management System, and how it interfaced with compliance to Mars, Inc. and the prevailing laws. As well as, the incidents that occurred under their management, along with the statements that have been made over time with regards to the incidents and occurrences that happened at the Mars Manteno facility under their management. Therefore, to flat out not answer or be able to evasively answer queries related to the operation and management is willfully and intentionally negligent of Defendant's duties as the Manager of the Mars Manteno facility, Mars, Inc., the employees it managed and the prevailing laws.

In addition, Defendant has not met the burden of showing how the interrogatories are overly broad, burdensome, irrelevant, vague, confusing, not reasonably calculated to lead to discovery of admissible evidence, or any other available adjective. **Interrogatories number six (6) through eleven (11)** provide intentionally false, deceptive and misleading information, regarding following company policy, fostering an animus and hostile working environment, misrepresentation to tribunals, knowledge of discriminatory acts and so on.

Kenco became aware of discriminatory acts in the middle of the summer of 2013, again in late summer of 2013, and the fall of 2013 regarding Mary Madison. Again at the beginning of 2014, regarding Vernon Henry and Pete Monstwillo; again in the spring of 2014 beginning with Nathan Doss, Tracy Davis, Vernon Henry, Anastasia Sandness, Jacque Morrison, Morris Tyson, Mardy Ringo, Scott Marksteiner, Arnold Brownlee and others throughout 2015.

I know this to be true, as I was the recipient of a vast number of the discriminatory complaints filed internally, along with calls and faxes made to the alleged employee hotline that could receipt complaints. I informed Len of the complaints and forwarded the complaints to Tammi Fowler as I had been instructed to do by her. Fowler was aware that Len and I were capable of handling Human Resource matters, as we continued to perform these same duties and tasks, as we had since 2001 and 1999 respectively, when Kenco began managing the facility. As a matter of fact we were trained to Kenco's specifications in May of 2013. **See Exhibit 53**

Defendant Kenco became so much so aware that Jay Elliott stated to the Department of Human Rights/EEOC around August 5, 2015 in its position statement that "Additionally, KLS was becoming the subject of more and more charges of discrimination at the time..... And so it hired one-Lori Varvel." Varvel was hired in November of 2014 and according to Defendant Kenco they began advertising for the position in September of 2014. **Exhibit 20 page 1 ¶ 4 section 2 line 9**

5

Therefore, Kenco had to be aware of the state of the facility to entertain the idea of hiring additional HR personnel. Matter of fact, there is a process that must occur prior to hiring an individual and the process begins with identifying a need, developing a hiring requisition and obtaining approval for the positon. This is according to company policy.

Moreover, Elliott is the same person, who under oath, is answering the Interrogatories for Defendant Kenco who stated that Defendant Kenco was not aware of discrimination, company policies and procedures, and making false statements, when in fact Elliot participated in numerous fact finding conferences, as he was the in-house attorney, who participated in various fact finding conferences including mine, Tyson's, Doss' Henry's and others now as an alleged employee of the company giving statements about incidents and occurrences that he did not have firsthand knowledge about; while simultaneously being the attorney of record see **Exhibit 28-Exhibit 32 and Exhibit L;** supplying policies, procedures and protocols that were effectuated after various incidents had occurred, as well as, drafting documents and responses to circumvent or minimize the matters before the various tribunals see **Exhibit 38** Defendants bate stamp number **000195**; and this is the same Elliott who was conveniently hired to be the VP of Legal, with the blessing and approval of Defendant Kenco's Senior Executives that include the President, the CFO and a VP, after being Defendant Kenco's outside counsel for a number of years prior to his employment with Defendant Kenco. See **Exhibit 34 Defendant's Exhibit #5-** Exempt Hiring Policy submitted to the IDHR/EEOC in **2015CF0034/21B-A42027** outlining the process that Elliott would have gone through to be hired according to company policy.

Elliot goes on in the **Interrogatory 11** to say, that no claims were substantiated against Walsh or the Manteno facility, which is simply not true, as Nathan Doss and Tracy Davis had finding of substantial evidence according to the IDHR/EEOC. Defendant Kenco, if not also Elliott proper, would have been in possession of that information, now, conveniently, has no recollection of the company's awareness of discrimination of hostile work environment or substantial findings.

Lastly for this synopsis, it is impossible for Defendant Kenco to have followed its own policies, procedures, protocols and best practices, as this action would have yielded documented evidence to this during the course of ordinary business. For example, if Defendant Kenco or its agents or the employees it managed followed policy, procedure, or protocol there would be logs, reports, and records of these actions that are to be available upon request and within a period of four (4) hours or shorter due to traceability requirements or Mars, Inc. We were audited to these standards and a requirement for conformity would be these documented records. According to Kenco's website, they were audited and complied with these standards see **Exhibit 55.** It is a dastardly intentional and malicious mistruth to make such a statement that goes against the very requirements to conformance to the FDA and Food Safety Modernization Act.

Furthermore, it would not be out of the realm to say that the failure to produce the associated paperwork is a form of discrimination, as the standard is to have the relative paperwork associated with the policies, procedures, protocols and best practices logged, tethered and retained. However, the most obvious reason would be that Defendant Kenco is continuing to

obstruct justice through a collusive, calculated and malicious effort of evidence tampering to ultimately harass, hinder, cause intentional infliction of emotional duress and stress to wear me down as they have others in the pass.

The production of this information/documents requested would not have required Defendant to search out any new information, as this information was either common practice to them or an intricate part of their operations-job duties, tasks, responsibilities, and functions of the company and or the employees it managed. In tandem, any documents required to support these answers, again, should have been easily accessible and producible for Defendant. As these documents, were byproducts of the ordinary course of business and compliance to Defendant Kenco and Mars' policies and procedures, as well as, the prevailing laws. In addition, records were to be maintained because of the charges of discrimination filed against Defendant Kenco and its current and former employees it managed.

Defendant, Kenco admitted to having such documents and having such documents on Defendants Manzello and Varvel's behalf, but has failed to produce them or particularize with specificity the reason that it has not done so. Moreover, the documents allegedly produced from the FOIA requested file from IDHR/EEOC of charge **2015CA1804/21BA50670** have been tampered with, as all of the documents have not been produced and a number of documents are in duplicate and triplicate accompanied by blank pages or documents not relevant to this matter. In February of 2016, the FOIA request yielded me 1180 pages **see Exhibit 44 and** according to Defendant Kenco the first 181 pages of the 1175 pages they claim came from the FOIA request were not actually a part of the request, as stated in Defendant Kenco request for production of documents. Therefore, including the duplicate pages, other unrelated information and blank pages there was a 285 page deficit in what was produced by Defendant Kenco relative to the FOIA request in the alleged count of documents received from FOIA. Based upon this, this is an intentional 24% shrinkage and spoliation of evidence by Defendant Kenco.

The obstructive, intentional misleading, deceptive, collusive and evasive actions of Elliott and Defendant Kenco are crimes against justice, the court, society and myself. These actions have hindered and delayed justice, violated the Civil Rules of Procedures, the attorney code of conduct, been an intentional infliction of emotional harm, cause irreparable harm and been a waste of judicial resources, tax payers monies including mine, as well as, an increased financial burden on me and my family.

**Defendant, Jabaley** has objected in some form to nearly every request, except number 6; the answer was not responsive or complete and evasive. The remaining objections raised have been made without specificity to what faction, part, or parts is being objected to. Defendant objected and refused to answer **Interrogatory number twelve (12);** Defendant should have had a grasp and clear understanding of Defendant Kenco's operations, policies and procedures and how they related to Defendant Kenco's Quality Management System that encompassed record keeping, compliance, and the prevailing laws, as well as, the incidents that occurred at the Mars Manteno facility, since that was the only facility that Defendant was allegedly managing at the time.

7

Therefore, not having knowledge about the operations of the company and to flat out not answer is a dereliction of Defendant's duties as the Director of Operations and the acting General Manager at the Mars Manteno Facility.

In addition, Defendant has not met the burden of showing how the interrogatories are overly broad, burdensome, irrelevant, argumentative, vague, not reasonably calculated to lead to discovery of admissible evidence, or any other available adjective that is outside the scope of Civil Rule of Procedure 26.

The production of this information would not have required Defendant to search out any new information, as this information was either personal to them or an intricate part of their job duties, tasks, responsibilities, and functions.  In tandem, any documents required to support these answers, again, should have been easily accessible and producible for Defendant, even if Defendant Kenco had to produce them on his behalf.   As these documents, were byproducts of the ordinary course of business and compliance to Defendant Kenco and Mars' policies and procedures, as well as, the prevailing laws.  Defendant admitted to having such documents and having such documents on behalf of other Defendants, but has failed to produce them or particularize with specificity the reason that it has not done so.

**Interrogatory numbers five (5), seven (7) and eight (8)** provided intentionally false, deceptive and misleading information, regarding the following of company policy; following company policy would have yielded documented evidence of such, like logs, reports and records which have not been produced by Defendant Kenco despite the fact that they stated to this court they have produced over 1500 pages on September 28, 2017, when actually, at that time had only produced about 355 or so pages, of which these documents are in duplicate and triplicate, information that is of public record and blank pages.  Kenco is audited to the documentation standards of the FDA See **Exhibit 55**

Additionally, what is most troubling about the responses to the Interrogatories, especially those regarding following company policy and the discrimination claims, is that Defendant Jabaley has on his LinkedIn page a letter of recommendation from Defendant Lopez that states that account was in extreme duress and that Jabaley handled it so well. **See Exhibit 58.**

Well the first question begs, what made the account be in such extreme duress? Would this have been what Elliott was referring to in the position statement that he wrote for Kenco to the IDHR/EEOC in August of 2015, whereby he stated that "Additionally, KLS was becoming the subject of more and more charges of discrimination at the time." **Exhibit 20 page 1 ¶ 4 section 2 line 9**

And if he (Jabaley) handled it so well, where is the paper work that would support this statement, why hadn't the "extreme duress" ceased prior to Lopez' coming and why is now that in Jabaley's **Interrogatory five (5)** he says "Jabaley did not deviate from Kenco's policies, procedures, or protocols in his handling of the allegations raised in this lawsuit related to McCurry or her

8

employment at Kenco." And there still remains no paperwork, even after he said under oath that he "did not deviate from Kenco's policies, procedures, or protocols in his handling of the allegations raised in this lawsuit related to McCurry of her employment at Kenco." Ironically and conveniently, neither have Jabaley or Defendant Kenco referenced or produced the policies, procedures, and protocols they claim to have not deviated from.

This admission form Jabaley supports the fact that Defendant Kenco was knowledgeable, apprised and aware of the matters not only that others had raised, but of those raised in the allegations of Plaintiff, McCurry. This admission, contradicts the statements made by Defendant Jabaley himself, Defendants Kenco, Walsh, Fowler, Lopez and Manzello about the companies awareness of discrimination at the Mars Manteno facility, as well as, their awareness of Defendant Kenco's policies and procedures and their duty to comply with them and other relevant laws.

On an additional note, the failure to produce the paperwork is a form of discrimination, as the standard and normal business practice is to have the relative paperwork associated with the policies, procedures, protocols and best practices, as this paperwork is mandated by law and a requisite of compliance to the law.

Yet again in another troubling odd spin, Jabaley states in **Interrogatory eleven (11)** that after his assignment ended he went back to being a project manager, as he was immediately prior to coming to Manteno and being the Director of Operations. Contrarily, this same LinkedIn page that belongs to Jabaley states that he had been a project manager in 2013 and had become Director in 2014 and remains a Director at Kenco to date. Another scenario where, an individual, who is under oath, is unclear and not certain about their express duties, responsibilities and obligations of their position at Defendant Kenco, when it comes to answering the Interrogatories and their social media pages.

**Defendant, Walsh, also** has objected in some form to nearly every request, except number **Interrogatory four (4);** the answer to the request was not responsive or complete and was evasive. The remaining objections raised have been made without specificity to what faction, part, or parts is being objected to. Defendant objected and refused to answer **Interrogatory number eleven (11);** Defendant should have had a clear and firm grasp and understanding of what occurred during his employment and potentially one of the issues that lead to his termination. As General Manager and site leader-manager of the Mars Manteno facility since late 2012 and an employee of the Mars Manteno facility since 2007, Defendant Walsh was in possession or should have been in possession of the knowledge of Mars and Kenco's operations, policies and procedures and how they related to Defendant Mars and Kenco's Quality Management System that encompassed record keeping, compliance, and the prevailing laws, as well as, the incidents that occurred at the Mars Manteno facility. Matter of fact, Walsh was responsible for ensuring everyone complied with these policies, procedures and prevailing laws at the Mars Manteno facility. Therefore, asserting to not have knowledge about the operations of

9

the company by not answering or down playing its relevance is a gross dereliction of Defendant's duties as the General Manager of the Mars Manteno Facility.

In addition, Defendant has not met the burden of showing how the interrogatories are overly broad, burdensome, irrelevant, argumentative, vague, not reasonably calculated to lead to discovery of admissible evidence, or any other available adjective that is outside the scope of Civil Rule of Procedure 26.

The production of this information would not have required Defendant to search out any new information, as this information was either personal to them or an intricate part of their job duties, tasks, responsibilities, and functions.  In tandem, any documents required to support these answers, again, should have been easily accessible and producible for Defendant, even if Defendant Kenco had to produce them on his behalf.   As these documents, were byproducts of the ordinary course of business and compliance to Defendant Kenco and Mars' policies and procedures, as well as, the prevailing laws.  Defendant admitted to having such documents and having such documents on behalf of other Defendants, but has failed to produce them or particularize with specificity the reason that it has not done so.

A couple of other real odd and highly suspicious responses are **Interrogatory number three (3).** Walsh does not seem to be clear about his working history, as he states that he worked at Tyson Foods prior to 4T's and was the General Manager, which was prior management company to Kenco.  Prior to 4T's Walsh worked at Xcel and was not a General Manager according to his LinkedIn page see **Exhibit 50**.  Who does not know where they worked and what they did when they were working?

**Interrogatory number five (5)** asserts that Walsh does not know Coffey's job functions at the Mars Manteno facility.  This is absurd and not realistic considering that Coffey managed the facility for Mars and Walsh would have had to report and take directives from him in two (2) of the positions that Walsh held at the Mars Manteno facility as Operations Manager and the General Manager.  For example, according to Defendant Mars' **bate stamp 976-977** Walsh reported an injury to Coffey who then reported the injury too Todd Moore, Defendant Mars' **bate stamp 1242** corroborates that Coffey was the decision maker and Coffey was so much so the decision maker that Coffey graded the WH Leadership in Defendant Mars' **bate stamp 1519,** allocated a time for the Manteno PIP response Defendant Mars' **bate stamp 1627,** and weighed in on Walsh's termination according to Defendant Mars' **bate stamp 2780-2781,** as well as, correspondence about contract modifications Defendant Mars' **bate stamp 1766** acknowledging that Walsh, Hise and Marquez was part of his team in Defendant Mars' **bate stamp 2814,** as  he had on other numerous occasions, as evidenced in Defendant Mars' bate stamp documents and from my personal knowledge along with Coffey superiors at Mars Defendant Mars' **bate stamp 2806-2812-Collectively known as Group Exhibit 64.**  Coffey outlines his job responsibility on his LinkedIn page relating to the Mars Manteno facility.  Coffey was on site nearly every day or at least the vast majority of the week and in constant contact with the facility; through the daily meetings that were held.  Defendant Mars' collective submission of three thousand four hundred

and seventeen (3417) pages captures the breadth and depth of Coffey's involvement at the Mars Manteno facility through one on one direct contact with every office worker at the Mars Manteno facility, from the General Manager to the Customer Service Representatives (clerks).

Not only did, these documents produced by Mars illustrated the level of direct and ongoing communication between the various office workers, including, but not limited to: Leonard Szplett, Valerie Lillie, Mike Manzello, Anthony Marquez, Marci DeRoiser, Dustin Spaulding, Julie Wade, Tari Hart, Lind St. Germaine, Deane Doyle and others with Coffey, but it also demonstrated the direct and ongoing communication with other Mars employees like Matt Chick and others associated with performing their day to day duties and tasks relative to their individual jobs. Consequently, this statement by Walsh or whomever is a shear intentional mistruth and is misleading to the roles that Coffey, Walsh and other Mars employees played at the Mars Manteno facility.

**Interrogatories number seven (7) and thirteen (13) assert the fact that Walsh did not deviate from company policy. The lack of production of documents suggest that** it is impossible for Defendant Walsh or Kenco to have followed the policies, procedures, protocols and best practices, as this action would have yielded documented evidence to this during the course of ordinary business. Also, neither Walsh nor Defendant Kenco referenced or produced the policies, procedures, and protocols they claim to have not deviated from. Furthermore, Defendant Mars document production supports the fact in several documents marked confidential that policies, procedures, and protocols were not being followed.

For example, if Defendant Kenco or its agents or the employees it managed followed policy, procedure, or protocol there would be logs, reports, and records of these actions that are to be available upon request and within a period of four (4) hours or shorter due to traceability requirements or Mars, Inc. and the FDA. We were audited to these standards and a requirement for conformity would be these documented records. It is a dastardly intentional and malicious mistruth to make such a statement that goes against the very requirements to conformance to the FDA and Food Safety Modernization Act, especially when Walsh states on his LinkedIn page that he brought ISO and FDA compliance to the Mars Manteno facility.

The failure to produce the paperwork is a form of discrimination, as the standard and ordinary business practice to have the relative paperwork associated with the policies, procedures, protocols and best practices logged, tethered and maintained.

**Defendant, Fowler**, has objected in some form to nearly every request, except number six (6); the answer provided is non-responsive, incomplete and evasive. The remaining objections raised have been made without specificity to what faction, part, or parts is being objected to. Defendant objected and refused to answer **Interrogatory number sixteen (16);** as the Senior Manager of HR, it is impossible not to know or have weighed in on the hiring of Elliott, considering the issues that Elliot would be dealing with arose out of the facility that you managed. Next, as the Senior Manager of HR you are very familiar with the policies, protocols, procedures, best

practices and forms that were created using Defendants Quality Management system that Fowler alleged that she lacks knowledge of in **Interrogatory number two (2).**

This begs the question, if you are not familiar with this concept and or scheme how did you carry out your job functions, duties or tasks, as well as, recognize the need you identified and claimed for hiring Varvel as the HR Manager of the Mars Manteno facility, as stated in Defendant Lopez' **Interrogatory number 4**. Furthermore, it was suggested that Fowler and Lopez were responsible for Varvel's hire; however Defendant **Mars bate stamp 1591** suggest that there were others who weighed in on the hiring of the HR manger because of the lack of leadership at Manteno.

**Interrogatories number five (5) and seven (7)** relate to company policy. Both Interrogatories assert that Fowler did not deviate from company policy. **Interrogatory five (5)** says "Fowler did not deviate from Kenco's policies, procedures, or protocols in her handling of the allegations raised in this lawsuit related to McCurry or her employment at Kenco." And there still remains no paperwork, even after she said under oath that she "did not deviate from Kenco's policies, procedures, or protocols in her handling of the allegations raised in this lawsuit related to McCurry of her employment at Kenco." This admission form Fowler supports the fact that Defendant Kenco was knowledgeable, apprised and aware of the matters not only that others had raised, but of those raised in the allegations of Plaintiff, McCurry and that the corporate HR was in receipt of this information.

This admission/statement coincides with the same admission/statement that Jabaley made with respect to his handling of my allegations raised and during my employment. Just as with Jabaley, Fowler's statement contradicts other statements made by her, as well as, statements made by Defendant Jabaley, Defendants Kenco, Walsh, Fowler, Lopez and Manzello about the companies awareness of discrimination at the Mars Manteno facility, as well as, their awareness of Defendant Kenco's policies and procedures and their duty to comply with them and other relevant laws.

Furthermore, especially in this case it is incomprehensible that Fowler could not have any knowledge of Defendant Kenco's policies, procedures, protocols, best practices and forms, as Fowler has authored a number of these policies, procedures, protocols, best practices and forms, as part of her job functions, duties, and tasks, as the Senior Manager. In addition, Fowler is a member and certified to these standards by the Society of Human Resources. More specifically, the policies, procedures, protocols, best practices and forms were developed according to Defendant Kenco's Quality Management scheme which is based on ISO. Fowler was responsible for numerous sites.

Fowler goes on to state on her LinkedIn page regarding Kenco:

> Responsibilities include management of the Employee Relations function for the five Kenco Companies: providing interpretation and advice to HR Managers and Site Managers on employment law, organization policy and

> overall employee relations issues; conducting investigations related to claims
> of harassment or discrimination and recommending steps for resolution:
> reviewing termination requests and providing management with appropriate
> action plans; and educating Managers regarding the spirit and intent of laws,
> regulations and company policies

No reasonable person would have allowed an individual that is inept to manage five lines of
business with several dozens of sites. Therefore, for Fowler to state, by failing to answer or
some other evasive means, that she has no knowledge of the infrastructure of the company's
operation and its policies, procedures, protocols, best practices and forms is a blatant and
intentional mistruth.

Moreover, Fowler should know and knows that the company is obligated to investigate
complaints by federal law; hence probably Fowler's contention that she did not deviate from
company policy.

On an additional note, the failure to produce the paperwork is a form of discrimination, as the
standard and normal business practice is to have the relative paperwork associated with the
policies, procedures, protocols and best practices, as this paperwork is mandated by law and a
requisite of compliance to the law. Neither Fowler nor Defendant Kenco referenced or produced
the policies, procedures, and protocols they claim to have not deviated from.

**Defendant, Lopez**, has objected in some form to nearly every request, except numbers four (4)
and six (6); the answer provided to each interrogatory is non-responsive, incomplete and evasive.
The remaining objections raised have been made without specificity to what faction, part, or
parts is being objected to. Defendant should have had a clear and firm grasp and understanding
of what occurred during his employment.

As General Manager and site leader-manager of the Mars Manteno facility and a former
employee of Mars, Inc., Defendant Lopez was in possession of the most knowledge of Mars and
Kenco's operations, policies and procedures and how they related to Defendant Mars and
Kenco's Quality Management System that encompassed record keeping, compliance, and the
prevailing laws, as well as, the incidents that occurred at the Mars Manteno facility. Matter of
fact, Lopez was responsible for everyone complying with these policies, procedures and
prevailing laws at the Mars Manteno facility. Therefore, asserting to not have knowledge about
the operations of the company by not answering or down playing its relevance is a gross
dereliction of Defendant's duties as the General Manager of the Mars Manteno Facility.

In addition, Defendant has not met the burden of showing how the interrogatories are overly
broad, burdensome, irrelevant, argumentative, vague, not reasonably calculated to lead to
discovery of admissible evidence, or any other available adjective that is outside the scope of
Civil Rule of Procedure 26.

The production of this information would not have required Defendant to search out any new information, as this information was either personal to them or an intricate part of their job duties, tasks, responsibilities, and functions. In tandem, any documents required to support these answers, again, should have been easily accessible and producible for Defendant, even if Defendant Kenco had to produce them on his behalf. As these documents, were byproducts of the ordinary course of business and compliance to Defendant Kenco and Mars' policies and procedures, as well as, the prevailing laws. Defendant admitted to having such documents and having such documents on behalf of other Defendants, but has failed to produce them or particularize with specificity the reason that it has not done so.

**Interrogatories number** five (5) and seven (7) relate to company policy. Both Interrogatories assert that Lopez, like Fowler and Jabaley, did not deviate from company policy. **Interrogatory five (5)** says "Lopez did not deviate from Kenco's policies, procedures, or protocols in his handling of the allegations raised in this lawsuit related to McCurry or her employment at Kenco." And there still remains no paperwork between the three (3) of them, even after he said under oath that he "did not deviate from Kenco's policies, procedures, or protocols in his handling of the allegations raised in this lawsuit related to McCurry of her employment at Kenco." This admission form Lopez supports the fact that Defendant Kenco was knowledgeable, apprised and aware of the matters not only that others had raised, but of those raised in the allegations of Plaintiff, McCurry.

This admission/statement coincides with the same admission/statement that Jabaley and Fowler made with respect to his handling of my allegations raised and during my employment. Just as with Jabaley and Fowler, Lopez' statement contradicts other statements made by him, as well as, statements made by Defendant Jabaley, Defendants Kenco, Walsh, Fowler, Lopez and Manzello about the companies awareness of discrimination at the Mars Manteno facility, as well as, their awareness of Defendant Kenco's policies and procedures and their duty to comply with them and other relevant laws.

Furthermore, it is impossible for Defendant Lopez or Kenco to have followed the policies, procedures, protocols and best practices, as this action would have yielded documented evidence to this during the course of ordinary business; neither have Lopez or Defendant Kenco referenced or produced the policies, procedures, and protocols they claim to have not deviated from.

In conclusion based upon, the Defendants independent and collective assertion that they followed company policy and did not deviate, supports the fact that there were policies, procedures, protocols, best practices and forms. Establishing this basis means that these would be standards used in the operations of the ordinary course of business; thereby, making these policies, procedures, protocols, best practices and forms discoverable and should have been produced, as it is their duty to do so. Furthermore, Defendants collectively point to these policies and procedures for compliance, but have intentionally and grossly failed to individually and collectively produce or even reference what policy or procedure, if any at all, that was used

14

to demonstrate this alleged compliance. This is a requirement to specify the records from which answers to interrogatories are derived under the civil rules of procedure that relate to discovery-Rule 33.

Last but not least, I feel that the Defendants counsel and the Defendants have intentionally, willfully and maliciously abused discovery, intentionally misrepresented to this court that they had responded in "good faith" to the discovery requests, as well as, obstructed and impeded justice, ultimately committing crimes against justice, this court, society and myself.

Especially in view of the campaign that Defendants counsel has waged against me with the court regarding discovery, sanctions and the submission of documents to the court there actions are irreparable, calculated, callous, heinous and a blatant disregard for the law and its governing procedures.

**Respectfully Submitted:**

*Edith McCurry*

**Edith McCurry**